UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SETH BURGETT, an individual, | ) |
| | ) |
| *Plaintiff,* | ) Cause No. |
| | ) Division No. |
| vs. | ) |
| | ) |
| JASON HELLICKSON, an individual, | ) |
| SUSAN HELLICKSON, an individual, and | ) |
| Does 1 through 100, | ) |
| | ) |
| *Defendants.* | ) |

**COMPLAINT FOR DECLARATORY RELIEF**

Seth Burgett (hereinafter "Burgett"), by his attorneys, and for his Complaint for Declaratory Relief against Jason Hellickson and Susan Hellickson (collectively "Defendants") and Does 1 through 100 (hereinafter the "Complaint"), states as follows:

**Parties**

1. Burgett is an individual residing in the State of Illinois and, at all relevant times herein, was a citizen of the State of Illinois. Burgett founded and serves as the Chairman and Chief Executive Officer of Verto Medical Solutions, LLC (hereinafter "Verto"). Including in connection with the events set forth herein, Burgett has and continues to conduct business within the city of St. Louis, Missouri.

2. Verto is a Delaware limited liability company that has and continues to maintain its headquarters and principal place of business in St. Louis, Missouri. In 2014, Verto sold its assets to Harman International Industries, Inc. (hereinafter "Harman"), and is now currently in the final stages of winding down its operations. Prior to its asset sale, Verto was in the business of designing and selling custom fitted headphones for athletes throughout the United States,

known as "Yurbuds." Verto, and its employees (including Burgett), have and continue to conduct this business primarily in St. Louis, Missouri.

3. Burgett is informed and believes that Jason Hellickson is a citizen of the State of Iowa and at all relevant times herein was a shareholder of Verto. Burgett is further informed and believes that Susan Hellickson a citizen of the State of Iowa and at all relevant times herein was a shareholder of Verto. Burgett and Defendants are parties to a certain agreements entitled "Re-allocation of Proceeds of Earn-Out Amount Received by Seth Burgett" dated August 25, 2014 (hereinafter the "Reallocation Agreements.") The Reallocation Agreements were negotiated and entered into in St. Louis, Missouri.

## Jurisdiction and Venue

4. Jurisdiction is appropriate in this Court under 28 U.S.C. § 1332 because the citizenship of the parties is diverse and that amount in controversy exceeds $75,000.00.

5. Venue is appropriate in this district because a substantial portion of the events giving rise to this dispute took place in this district.

## Summary of the Action

6. Verto was formed as a Delaware limited liability company in January 2008. As its primary founder, Burgett sought to create and market a solution to the discomforts and impracticalities of standard earphones used by millions of athletes and exercise enthusiasts. Using multiple designs and tests, Burgett created Yurbuds; customized earphones to fit the unique shape of the purchaser's ear to reduce discomfort and enhance the listening experience for customers with active lifestyles. Yurbuds grew rapidly and, by 2013, had more than 40 employees working in the St. Louis area.

## The Asset Purchase Agreement

7. In 2014, Verto entered into negotiations with Harman for the sale of Verto's

assets.  During those negotiations, Burgett was assured that Yurbuds' market share would continue to grow.  In fact, Burgett learned that he and the other creators of Yurbuds would have the opportunity to expand the Yurbuds product line throughout the world, and would have Harman's support in doing so.  After obtaining consent from the Board of Directors and informing shareholders of the final terms, Harman and Verto entered into an Asset Purchase Agreement on June 2, 2014 (hereinafter the "APA").  The purchase price for Verto's assets was $38 million.  Harman further made Burgett and Verto's other key managers, Rich Daniels and Craig Ceranna, employees of Harman.

8. Section 2.3 of the APA provided for a "holdback" – $3.7 million of the purchase price retained by Harman post-transaction in order to cover any adjustments to net working capital, Verto's debt adjustment, if any, and Verto's potential indemnities.  The terms, period and release of the holdback were set forth in Section 10.10 of the APA.

9. Under Section 2.4(a), the APA also provided for the possibility of achieving additional profit of up to $38 million – so called "earn-out" – based on increased sales of Yurbuds.

10. Pursuant to Section 3.8 of Verto's Second Amended Operating Agreement (hereinafter the "Operating Agreement"), all proceeds received as holdback or earn-out from Harman, if any, were to be distributed to Verto's shareholders on a pro-rata basis.

11. Upon closing of the APA, Harman withheld $3.7 million from the balance of the purchase price.  Following receipt of the purchase price amount, Verto paid all of its then existing debt and remaining liabilities.  The remainder of the purchase proceeds were distributed to the Verto shareholders on a pro rata basis.

### Defendants' Reallocation Agreements

12. In August 2014, Burgett entered into reallocation agreements with certain

shareholders who did not receive a 100% return on their initial investments at the close of the Harman acquisition. Such reallocation agreements were entered into with Jason and Susan Hellickson. Attached hereto as Exhibits "A" and "B" are a true and correct copies of Defendants' Reallocation Agreements. One such agreement with Defendants related to their investment in "Yurbuds." Exhibit A. The second such agreement with Defendants related to their investment in YBInspired, LLC. Exhibit B. Both Reallocation Agreements relate to the sale of Verto's assets.

13. Pursuant to Sections 1 and 2 of the Reallocation Agreements, Burgett agreed that any monies received by him for earn-out under the APA would be allocated first to Defendants before Burgett received any additional earn-out sums. This reallocation would continue until Defendants' aggregate investment amount had been repaid in full. Additionally, pursuant to Section 3 of the Reallocation Agreement, "any distribution of proceeds to shareholders of Yurbuds that is attributable to money received by Yurbuds from Harman in respect of the General Holdback Amount will be distributed normally as provided in the Operating Agreement; the reallocation obligations described . . . above **will not apply to the General Holdback Amount**." (emphasis added.) In other words, the express reallocation terms to which Burgett and Defendants agreed specifically excluded amounts recognized as holdback proceeds.

### Dispute with Harman

14. In the months following the Harman acquisition, various issues arose between Verto and Harman. After a series of disputes involving the parties' respective rights and obligations under the APA, it became apparent that Verto would not achieve any of its earn-out potential under the APA. On November 17, 2015, Burgett ceased being employed by Harman.

15. In December 2015, Harman asserted claims for indemnity of approximately $12 million against Verto. Thereafter, Verto presented Harman with its potential counter-claims in

an effort to resolve the parties' ongoing disputes. Burgett likewise hired counsel to pursue his employment claims against Harman. Verto and Harman entered into settlement discussions and ultimately resolved the outstanding disputes between the entities, as well as the outstanding claims relating to Burgett's employment with Harman. The terms of the settlement with Harman were memorialized in a confidential settlement agreement executed on February 17, 2016 (the "Settlement Agreement"). Under the settlement, Verto was paid certain amounts in exchange for typical releases of liability.

16.     On March 10, 2016, the settlement proceeds were paid to Verto. On April 4, 2016, Burgett communicated with Verto shareholders, via letter, informing them that the amount obtained from the settlement with Harman constituted holdback funds under Section 2.4 of the APA, as well as Burgett's employment severance payment. Ultimately, upon receipt of wire transfer information, a distribution of the settlement proceeds was made to shareholders on a pro rata basis.

17.     On April 7, 2016, Douglas Vander Weide, a Verto shareholder, sent a letter to other Verto shareholders describing the Verto settlement. On information and belief, Vander Weide is a financial advisor who represents the interests of Defendants relating to the Verto investment. In that letter, Vander Weide contended that the settlement proceeds paid to Verto by Harman constitute earn-out which, under Sections 1 and 2 of the Reallocation Agreements, would be required to be distributed to Defendants, and others with similar reallocation letters, before Burgett would take any additional monies. The letter further stated that if Burgett failed to designate his entire settlement amount as earn-out, legal action would be pursued.

18.     The APA, the Settlement Agreement and the Reallocation Agreements with Defendants make clear that the settlement proceeds paid to Verto by Harman constitute holdback

proceeds as defined under the APA; not earn-out. The Reallocation Agreements also make clear that holdback monies are excluded from redistribution. A reasonable interpretation of the operative documents demonstrates that the settlement proceeds paid were not earn-out and thus, were not subject to reallocation.

## COUNT I
**(Declaratory Relief – Against Jason Hellickson, Susan Hellickson and Does 1 through 100)**

19. Burgett incorporates by reference all of the above allegations as if set forth fully herein.

20. There exists a justiciable controversy between Burgett and Defendants, for which there is no adequate remedy at law. The facts above invoke substantial legal principles that entitle Burgett to relief from the Court.

21. A controversy exists regarding the Reallocation Agreements with Defendants, as they relate to the settlement proceeds paid by Harman. Defendants, through Vander Weide, contend that the settlement proceeds paid by Harman to Burgett constitute earn-out which, under Sections 1 and 2 of the Reallocation Agreements, would be required to be distributed to Defendants and others with similar reallocation letters, before Burgett would take any additional earn-out sums. Burgett contends that the settlement proceeds do not constitute earn-out under the terms of the operative agreements and are therefore exempt from the Reallocation Agreement.

22. There exists no adequate remedy at law to resolve this dispute, as there is a fundamental disagreement over the meaning of the operative terms of the Reallocation Agreement. No claim for monetary damages or injunctive relief is adequate to resolve this dispute. Rather, the Court's intervention is required to articulate the specific rights and duties of the parties.

23. The dispute involves substantial legal principles of contract interpretation, as well as the parties' relative rights and contractual duties, which require the Court's intervention.

24. Burgett is entitled to a declaration from the Court regarding the following:

a. That Sections 1 and 2 of the Reallocation Agreement apply exclusively to earn-out proceeds, and exclude any reallocation of holdback payments;

b. That the settlement proceeds paid by Harman do not constitute earn-out pursuant to Section 2.4 of the APA, Section 3.8 of the Second Amended Operating Agreement and the terms of the Settlement Agreement; and

c. That the pro rata amount received by Burgett from the Harman settlement proceeds cannot be characterized as earn-out and is therefore exempt from the terms and conditions of the Reallocation Agreement.

## RELIEF REQUESTED

WHEREFORE, Burgett respectfully prays:

A. That this Court declare that Sections 1 and 2 of the Reallocation Agreement apply exclusively to earn-out proceeds, and exclude any reallocation of holdback payments;

B. That this Court declare that the settlement proceeds paid by Harman do not constitute earn-out pursuant to Section 2.4 of the APA, Section 3.8 of the Second Amended Operating Agreement and the terms of the Settlement Agreement;

C. That this Court declare that the pro rata amount received by Burgett from the Harman settlement proceeds cannot be characterized as earn-out and is therefore exempt from the terms and conditions of the Reallocation Agreement;

D. That Burgett have and receive the costs of this action and reasonable attorneys' fees; and

- 8 -

      E.      That Burgett have such other further and different relief as the interests of justice may require.

DATED this 3rd day of May, 2016.

                                      Respectfully submitted,

                                      /s/ James F. Bennett
                                      James F. Bennett, #46826
                                      Megan S. Heinsz, #56377
                                      Dowd Bennett LLP
                                      7733 Forsyth Blvd.
                                      Suite 1900
                                      St. Louis, MO 63105
                                      (314) 889-7300
                                      (314) 863-2111 (facsimile)
                                      jbennett@dowdbennett.com
                                      mheinsz@dowdbennett.com

Jeffrey A. Rosenfeld *(pro hac pending)*
Grant P. Alexander *(pro hac pending)*
DLA Piper LLP (US)
2000 Avenue of the Stars, 4th FL NT
Los Angeles, CA 90067


ATTORNEYS FOR PLAINTIFF Seth Burgett

- 9 -