UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SETH BURGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16CV00622 AGF |
| | ) | |
| JASON HELLICKSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

This diversity action for declaratory relief is before the Court on the motion (Doc. No. 17) of Defendants Jason Hellickson and Susan Hellickson to dismiss Plaintiff Seth Burgett's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[1]  Alternatively, the Hellicksons request a stay under the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), during the pendency of a related action in Iowa state court.  For the reasons set forth below, the Hellicksons' motion to stay will be granted.

---

[1] Defendants also invoke Federal Rule of Civil Procedure 12(b)(3) in their motion to dismiss but do not otherwise address venue in their motion, supporting memorandum, or reply.

## BACKGROUND

Burgett, an Illinois citizen, filed this complaint for declaratory judgment on May 5, 2016, against the Hellicksons, both Iowa citizens, and John Does 1-100. Burgett alleges that he is the "prime founder," Chairman, and CEO of Verto Medical Solutions, LLC ("Verto"), a Delaware limited liability company with its principal place of business in Missouri. Verto developed "Yurbuds" headphones for athletes. As alleged in the complaint, Verto was founded in 2008, and sold its assets to Harman International Industries, Inc., ("Harman") in 2014 for a purchase price of $38 million. The Asset Purchase Agreement ("APA") included a "holdback" provision and an "earn-out" provision. The holdback provision called for Harman to retain $3.7 million of the purchase price to cover adjustments to Verto's debt or potential indemnities, with the terms and release of the holdback funds governed by the APA. The earn-out provision provided for possible additional payments from Harman, over a three-year period, of up to $38 million based on better-than-anticipated sales of Yurbuds. The Operating Agreement between Verto and its shareholders provided that all holdback and earn-out payments from Harman were to be distributed to Verto shareholders pro-rata. As part of the acquisition transaction, Burgett became an employee of Harman.

In August 2014, Burgett entered into Reallocation Agreements (Doc. No. 1-3) with Defendants (the Hellicksons and the Does), who were all Verto shareholders who, after the pro rata distribution of the purchase price and some released holdback funds, had not yet received a full return on their initial

investments. Pursuant to the Reallocation Agreements, Burgett agreed that any monies received by him as a shareholder for earn-out under the APA would be reallocated to Defendants until they were repaid their initial investment in full.

After the Harman acquisition, disputes arose between Harman and Verto culminating the termination of Burgett's employment, and a confidential Settlement Agreement dated February 17, 2016. As alleged in the complaint, Verto was paid "certain amounts in exchange for typical releases of liability." Burgett asserts that the settlement proceeds consisted of a combination of (1) a holdback payment and (2) a severance payment for the termination of his employment. He asserts that he distributed the non-severance portion of the proceeds to Verto shareholders pro-rata, in accordance with the Operating Agreement. The Hellicksons contend that the settlement proceeds constituted an earn-out payment and should have been distributed pursuant to the Reallocation Agreements. Burgett seeks a declaration from the Court that none of the settlement proceeds constituted earn-out funds that were subject to the Reallocation Agreements.

On July 11, 2016 (a little more than two months after the present action was filed), the Hellicksons and 57 other Verto shareholders who had Reallocation Agreements with Burgett, filed suit against Burgett in Iowa state court. Of the 59 plaintiffs, 40, including the Hellicksons, were from Iowa; eight were from Missouri; two were from Illinois; two were from Belgium; and the remaining seven were from other states in the United States. The plaintiffs asserted claims of

fraud, breach of fiduciary duty, breach of contract, promissory estoppel, unjust enrichment, and conversion, all based on Burgett's treatment of the settlement proceeds (identified in the Iowa lawsuit as $3.5 million) as severance and holdback payments. (Doc. No. 18-2.) The plaintiffs maintained that all of the $3.5 settlement proceeds paid by Harman should be treated as earn-out funds. The breach of contract claim asserts that Burgett breached his Reallocation Agreements with plaintiffs by failing to distribute the settlement proceeds in accordance with those agreements.

On July 15, 2016, the Hellicksons filed the motion now under consideration. They first argue that the Court lacks subject matter jurisdiction over this action, because by failing to identify the citizenship of the Doe Defendants, Burgett failed to plead sufficient facts to establish complete diversity; and further, two of the Doe Defendants were Illinois citizens, as shown by the Iowa complaint, defeating diversity jurisdiction. The Hellicksons further argue that in light of the action pending in Iowa state court, abstention is warranted under *Colorado River*, 424 U.S. at 813 (holding that a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and "exceptional circumstances" warrant abstention), because all the factors to be considered weigh in favor of abstention.

According to the Hellicksons, the Eastern District of Missouri is an especially inconvenient forum, because key witnesses and documents are located in Iowa; maintaining separate actions will result in piecemeal litigation; even

4

though this case was filed first, it does not have priority as both lawsuits are in the same early procedural posture; state law, not federal law will govern; and the state forum is adequate to protect Burgett's rights, as he can bring his cause of action as a counterclaim in the Iowa lawsuit.

On July 25, 2016, Burgett voluntarily dismissed the Doe Defendants, and on the same day, responded to the Hellicksons' motion to dismiss or to stay this action. Burgett argues that the dismissal of the Doe Defendants renders the Hellicksons' jurisdictional argument moot. Burgett also argues that there is no basis for *Colorado River* abstention. As a preliminary matter, Burgett argues that the two lawsuits are not parallel, as the parties are not the same, the claims are not the same, and the relief sought is not the same. Burgett further argues that in any event, the Hellicksons have failed to show that extraordinary circumstances are present so as to justify this Court's surrender of its jurisdiction.

In reply, the Hellicksons argue that as this is a declaratory judgment action, the Court's decision whether to stay the action during the pendency of the Iowa state court action is governed, under *Wilton*, 515 U.S. at 280, by the discretionary standard of *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) rather than the "exceptional circumstances" test of *Colorado River*.

## **DISCUSSION**

The Court first agrees with Burgett that the dismissal of the Doe Defendants renders the Hellicksons' jurisdictional argument moot, even assuming two of the Does were from Illinois. *See Pac. Marine Freight, Inc. v. Foster*, No.

5

10-CV-0578-BTM-BLM, 2010 WL 3339432, at *3 (S.D. Cal. Aug. 24, 2010). But the Court agrees with the Hellicksons that staying this declaratory judgment action is warranted, in light of the case against Burgett now pending in Iowa state court.

As the Hellicksons argue in their reply, in *Wilton,* 515 U.S. at 280, the Supreme Court held that a district court's decision to stay a declaratory judgment action during parallel state court proceedings is governed by the discretionary standard of *Brillhart*, not the "exceptional circumstances" test developed in *Colorado River*. *Wilton*, 515 U.S. at 289. *Brillhart* held that in a declaratory judgment action, a federal district court is under no compulsion to exercise its jurisdiction. Accordingly, the district court had broader discretion in ruling on motion to dismiss a declaratory judgment action on the ground that another proceeding is pending in state court in which all matters in controversy between the parties can be fully adjudicated. *Brillhart*, 316 U.S. at 496. The district court should consider whether the questions in controversy between the parties to the federal suit and which are not foreclosed under the applicable substantive law can better be settled in the proceeding pending in the state court. *Id*. at 496-97. "This broader discretion arises out of the Declaratory Judgment Act's language that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration.' 28 U.S.C. § 2201(a)." *Royal Indem. Co. v. Apex Oil Co*., 511 F.3d 788, 792 (8th Cir. 2008).

6

The determination of whether suits are parallel "is a threshold determination for identifying the extent of a district court's discretion to grant a stay." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013). State and federal proceedings are parallel "if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and satisfactorily resolve the dispute or uncertainty at the heart of the federal declaratory judgment action." *Id.* (citation omitted); *see also Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005).

Here the Court concludes that this declaratory judgment action and the Iowa state court action are parallel for purposes of the abstention doctrine. Burgett and the Hellicksons are parties to both actions, the core issue in both actions is whether the settlement proceeds constituted holdback or earn-out funds under the APA, and resolution of the claims in the state action will dispose of the federal suit for declaratory relief. No federal claims or defenses are involved in either action. *See, e.g., James River Ins. Co. v. Impact Strategies, Inc.*, 699 F. Supp. 2d 1086, 1090 (E.D. Mo. 2010) (holding that a declaratory judgment action by an insurer, seeking to determine whether it had duty to defend and indemnify an insured pursuant to commercial general liability policy with respect to claims in a state court action, was parallel to the underlying state court action).

In determining whether to abstain under *Wilton*, the Eighth Circuit has instructed that a district court's "key consideration . . . is 'to ascertain whether the issues in the controversy between the parties to the federal action . . . can be better

7

settled by the state court' in light of the 'scope and nature of the pending state court proceeding.'" *Evanston Ins. Co. v. Johns*, 530 F.3d 710, 713 (8th Cir. 2008) (quoting *Capitol Indem. Corp. v. Haverfied*, 218 F.3d 872, 874 (8th Cir. 2000)). Here, with the dismissal of the Doe Defendants from the present action, the scope and nature of the Iowa state court proceeding renders that action a superior vehicle to resolve the issues between the parties, as the Iowa proceeding includes as plaintiffs all those with whom Burgett has a Reallocation Agreement. A decision in favor of Burgett in this federal action, involving only the Hellicksons as adversaries, may not be binding on nonparties, who are parties in the Iowa state court action. Further, other claims that could impact the result are included in the state court action.

The timing of the declaratory judgment action in comparison with the state court action is not of significant import, as the cases are both in the initial stage of litigation; the parties in the present case have not yet had a Federal Rule of Civil Procedure 16 scheduling conference. *See Empire Fire & Marine Ins. Co. v. Scheibler*, No. 4:16CV594 HEA, 2016 WL 6524341, at *2 (E.D. Mo. Nov. 3, 2016) (dismissing an earlier-filed declaratory judgment action in light of a parallel state court garnishment action, where the parties had not yet had a Rule 16 scheduling conference in the federal action; "[T]he Court is not compelled to strictly follow the first-to-file rule when determining whether to exercise jurisdiction under the Declaratory Judgment Act.").

8

In sum, the Court concludes that *Wilton* abstention is warranted here. "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n. 2; *see also Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995); *HBE Corp. v. Burrus*, No. 4:09CV906 HEA, 2009 WL 3517532, at *4 (E.D. Mo. Oct. 23, 2009).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants Jason Hellickson and Susan Hellickson to dismiss Plaintiff Seth Burgett's complaint for lack of subject matter jurisdiction, or to abstain, is **GRANTED** to the extent that this case is **STAYED** pending resolution of the parallel case in the Iowa state court. (Doc. No. 17.)

**IT IS FURTHER ORDERED** that Clerk's Office shall close this case for Administrative purposes only.

**IT IS FURTHER ORDERED** that the parties shall notify the Court of the final disposition of the Iowa case at the trial court level within 14 days of such

disposition.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2016.